## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

ASHLEY NICHOLE MAGALLAN,          )
Individually, and as Surviving Spouse and   )
Next Friend of JESUS MAGALLAN, JR.,   )
Deceased,                          )
                                   )
      Plaintiffs,              )
                                   )
vs.                                )    Case No. 16-cv-0668-CVE-FHM
                                   )
ZURICH AMERICAN INSURANCE          )
COMPANY and  JOHN CHRISTOPHER      )
CRELIA,                            )
                                   )
      Defendants,              )
                                   )
ZURICH AMERICAN INSURANCE          )
COMPANY,                           )
                                   )
      Third-Party Plaintiff,   )
                                   )    Delaware County Case No. CJ-16-185
WYOMING CASING SERVICE, INC.,      )
                                   )
      Third-Party Defendant.   )

## PLAINTIFFS' MOTION FOR
## PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

JOE E. WHITE, JR.     OBA #12930
CHARLES C. WEDDLE III  OBA #18869
WHITE & WEDDLE, P.C.
630 N.E. 63rd Street
Oklahoma City, Oklahoma  73105
(405) 858-8899
(405) 858-8844 FAX
joe@whiteandweddle.com
charles@whiteandweddle.com

and

GARY B. HOMSEY          OBA#4229
HOMSEY LAW CENTER
4816 Classen Boulevard
Oklahoma City, Oklahoma  73118
(405) 843-9923
(405) 848-4223
gbh@homseylawcenter.com

*Attorneys for Plaintiffs,*
*Ashley Nichole Magallan, individually,*
*and as surviving spouse and next friend of*
*Jesus Magallan, Jr., Deceased*

## TABLE OF CONTENTS AND AUTHORITIES

Page

I.   INTRODUCTION . . . . . . . 2

   *Torres v. Kansas City Fire & Marine Ins. Co.*,
   1983 OK 32, 849 P.2d 407 . . . . . 2

   85A O.S. Supp. 2016 §§1-125 . . . . . 2

II.   STATEMENT OF MATERIAL FACTS . . . . 3

   L.Cv.R. 56.1(b) . . . . . . 3

   A.   Zurich Policy . . . . . . 3

      36 O.S. Supp. §3636(C) . . . . . 8

   B.   Circumstances of the Undelying Claim . . . 8

      85A O.S. Supp. 2016 §§1-125 . . . . 9, 10

   C.   Zurich Coverage Determinations . . . . 10

III.   ARGUMENTS & AUTHORITIES . . . . . 14

   A.   The Standard for Summary Judgment . . . 14

      *Anderson v. Liberty Lobby*,
      477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) . 14, 15

      *Celotex Corp. v. Catrett*,
      477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) . 14, 16

      *In Re Peterson*,
      253 U.S. 300, 40 S.Ct. 543, 63 L.Ed. 919 (1920) . 15

      *Matsushita Electric Industry v. Zenith Radio Corp.*,
      475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) . 14, 15

      Fed. R. Civ. P. 56(e) . . . . . 15

   B.   Magallan Is Entitled to UM Benefits . . . 16

      *Mustain v. U.S.F.&G.*,
      1996 OK 98, 925 P.2d 533 . . . . . 17

*Pentz v. Davis,*
1996 OK 89, 927 P.2d 538 . . . . . 17

*Rogers v. Goad,*
1987 OK 59, 739 P.2d 519 . . . . . 17

*Torres v. Kansas City Fire & Marine Ins. Co.,*
1983 OK 32, 849 P.2d 407 . . . . . 18, 19

*Townsend v. State Farm Mutual Automobile Ins. Co.,*
1993 OK 119, 860 P.2d 236 . . . . . 17

Fed. R. Civ. P. 56 . . . . . 19

36 O.S. Supp. 2014 §3636(B, H) . . . . . 17

47 O.S. 2011 §§7-600(1)(b); 7-601(A) . . . 16, 17

**C.      Zurich's Workers' Compensation Exclusion from
UM Coverage Is Unenforceable** . . . . 19

*Cadell v. XL Specialty Insurance,*
2012 WL 2359975, *5 (D. N.H., June 20, 2012) . 20

*Dodson v. St. Paul Insurance Co.,*
1991 OK 24, 812 P.2d 372 . . . . . 19

*Max True Plastering Co. v. U.S.F.&G.*
1996 OK 28, 912 P.2d 861 . . . . . 19

Fed. R. Civ. P. 56 . . . . . 20

**D.      Zurich's Business Auto Coverage Exclusions
Do Not Limit UM Coverage** . . . . . 20

*Cadell v. XL Specialty Insurance,*
2012 WL 2359975, *5 (D. N.H., June 20, 2012) . 23, 24

*Max True Plastering Co. v. U.S.F.&G.*
1996 OK 28, 912 P.2d 861 . . . . . 22, 23

**IV.      CONCLUSION** . . . . . . 24

**CERTIFICATE OF SERVICE** . . . . . 26

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ASHLEY NICHOLE MAGALLAN, Individually, and as Surviving Spouse and Next Friend of JESUS MAGALLAN, JR., Deceased, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 16-cv-0668-CVE-FHM |
| ZURICH AMERICAN INSURANCE COMPANY and  JOHN CHRISTOPHER CRELIA, | ) ) ) ) | |
| Defendants, | ) ) | |
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| WYOMING CASING SERVICE, INC., | ) ) | Delaware County Case No. CJ-16-185 |
| Third-Party Defendant. | ) ) | |

## PLAINTIFFS' MOTION FOR
## PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

COME NOW the Plaintiffs and Counter-Defendants, Ashley Nichole Magallan, Individually and as Surviving Spouse and Next Friend of Jesus Magallan, Jr., Deceased, (hereinafter "Magallan"), and moves the Court pursuant to Fed. R. Civ. P. 56 and L.Cv.R. 56.1 to enter partial summary judgment in her favor and against the Defendant and Counter-Plaintiff, Zurich American Insurance Company (hereinafter "Zurich"), holding that she is entitled to benefits under the uninsured and underinsured motorist coverage (hereinafter "UM") coverage of a policy issued to the Third-Party Defendant, Wyoming Casing Service, Inc. (hereinafter "Wyoming Casing").  In support of this Motion, Magallan would show the Court as follows:

## I.   INTRODUCTION

Jesus Magallan, Jr. died February 17, 2015, while he and Pedro Ochoa (hereinafter "Ochoa") were passengers in a Chevrolet vehicle owned by Wyoming Casing and driven by Robert Kirk (hereinafter "Kirk"); all three were employees of Wyoming Casing and were within the course and scope of their employment.  Kirk was making a left hand turn from Highway 64 onto Highway 60 near Freedom, Oklahoma, when he collided with a tractor-trailer driven by the Defendant, John Christopher Crelia (hereinafter "Crelia").  Zurich issued to Wyoming Casing an automobile liability insurance policy which included UM and covered the vehicle in which Jesus Magallan, Jr. was riding at the time of his death, but Zurich has obstinately refused to acknowledge the legitimacy of Magallan's claim for benefits under that policy.  Zurich concluded that Kirk was at fault in causing the accident and death of Jesus Magallan, Jr. on February 17, 2015, but asserts that workers' compensation exclusivity bars Magallan's claim against him and employee exclusions bar recovery under the liability coverage.  Zurich also concluded that Crelia was not at fault and contends Magallan is not entitled to UM recovery. Zurich did not address whether Magallan could recover UM based on Kirk's negligence as the cause of the accident, injuries, and death.

As an occupant of the insured vehicle, Jesus Magallan, Jr. was a first-party insured for the UM benefits provided by the Zurich policy covering that vehicle, and Magallan is entitled to judgment in her favor for the benefits so provided.  Oklahoma law has long recognized that an employee may recover under his employer's UM policy even though the employee is also receiving workers' compensation benefits. *Torres v. Kansas City Fire & Marine Insurance Co.*, 1983 OK 32, 849 P.2d 407.  That principle remains intact despite the enactment, in 2013, of the Administrative Workers' Compensation Act, 85A O.S. Supp. 2016, §§1-125.

2

Accordingly, Magallan is entitled to judgment in her favor on her claims against Zurich for breach of contract and declaratory relief, as well as judgment against Zurich on its counterclaim against her.  Petition [Doc. 2-1], ¶¶14-17, 25-26, pp. 3-5; Zurich's Counterclaim [Doc. 11].

## II.   STATEMENT OF MATERIAL FACTS

Pursuant to L.Cv.R. 56.1(b), Magallan offers the following "concise statement of material facts to which [she] contends no genuine issue of fact exists":

### A.   Zurich Policy

1.   Zurich issued Business Automobile Policy BAP 0134582 to Wyoming Casing as named insured with a policy period from September 1, 2014, to September 1, 2015; Wyoming Casing is identified as a "corporation," and the Policy provided Business Auto Coverage and Oklahoma UM Coverage, among other provisions.  Exhibit 1, Zurich Policy, Common Policy Declarations, Schedule of Forms Endorsements, Business Auto Declarations, Business Auto Coverage Form & Oklahoma Uninsured Motorist Coverage; ZURICH 000003-000005, 000029-000030, 000045-000056, 000064-000067;[1] Exhibit 2, Deposition of Paula Nevin, p. 12, l. 20 - p.13 l. 10; p. 29, l. 20 - p. 31, l. 19; Exhibit 3, Deposition of William Carroll, p. 20, l. 17 - p. 22, l. 4; see Joint Status Report [Doc. 27], Section IV (C), Stipulated Fact Nos. 4-7, p.5.

2.   The policy issued by Zurich to Wyoming Casing defined "Who Is Insured" for purposes of the Business Auto Coverage Form (subject to certain inapplicable exceptions) as:

The following are "insureds":

a.  You for any covered "auto."

---

[1] See also relevant Policy provisions attached to Doc. No. 71 as 71-2, 71-3, 71-4, 71-5, 71-7, 71-9, and 71-16.

> b. Anyone else while using with your permission a covered "auto"
>    you own, hire or borrow....

Exhibit 1, Zurich Policy, Business Auto Coverage Form, Section II (A)(1), p.2, ZURICH000046;

see Joint Status Report [Doc. 27], § IV (C), Stipulated Fact No. 5, p.5.

3.      The Insuring Agreement for the Business Auto Coverage in the Policy Zurich

issued to Wyoming Casing states:

> We [Zurich] will pay all sums and "insured" legally must pay as
> damages the cost of "bodily injury" or "property damage" to which
> this insurance applies, caused by an "accident" and resulting from
> the ownership, maintenance or use of a covered "auto".

Exhibit 1, Zurich Policy, Business Auto Coverage Form, Section II (A), p.2, ZURICH000046;

Exhibit 2, Nevin Deposition p. 33, l. 11 - p. 34, l. 21; Exhibit 3, Carroll Deposition, p. 40, l.15 -

p. 41, l. 16; see Joint Status Report [Doc. 27], § IV (C), Stipulated Fact No. 5, p.5.

4.      The Business Auto Declarations in the Policy Zurich issued to Wyoming Casing

provides a $2,000,000 liability limit for "COVERED AUTOS LIABILITY," using the symbol

"1," which means the coverage applies to "Any Auto."  Exhibit 1, Zurich Policy, Business Auto

Declarations Item Two, p. 2; Business Auto Coverage Form, Section I, Covered Autos, p. 1;

ZURICH 000030 & ZURICH 000045; Exhibit 2, Nevin Deposition, p. 30, l. 9 - p. 31, l. 16; see

Joint Status Report [Doc. 27], § IV (C), Stipulated Fact No. 5, p.5.

5.      The Business Auto Coverage in the Policy issued by Zurich to Wyoming Casing

is limited by certain exclusions, including the following:

> This insurance does not apply to any of the following:
>                      . . . .
>
> 3. Worker's Compensation
>
>    Any obligation for which the "insured" or the insured's" insurer
>    may be held liable under any worker's compensation disability
>    benefits or unemployment compensation law or any similar law.

4

4. Employee Indemnification And Employer's Liability

"Bodily Injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

   (1) Employment by the "insured"; or
   (2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

   (1) Whether the "insured" may be liable as an employer in any other capacity; and

   (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

   . . . .

5. Fellow Employee

"Bodily injury" to:

a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

b. The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph a. above.

Exhibit 1, Zurich Policy, Business Auto Coverage Form, Section II (B), pp. 3-4, ZURICH

000047-000048; Exhibit 2, Nevin Deposition, p. 41, l. 6-21; p. 46 l. 7-21; Exhibit 3, Carroll

Deposition, p. 41, l. 17 - p. 42, l. 5; see Joint Status Report [Doc. 27], § IV (C), Stipulated Fact

No. 5, p.5.

6.　　　Policy No. BAP0134582, issued by Zurich to Wyoming Casing, provided UM Coverage pursuant to Oklahoma law with limits of $1 million for "Each 'Accident'" using the symbol "2," which means the coverage applies to Wyoming Casing's "Owned 'Autos' Only." Exhibit 1, Zurich Policy, Business Auto Declarations Item Two, p. 2; Business Auto Coverage Form, Section I, Covered Autos, p. 1; Oklahoma UM Coverage, p. 1, ZURICH 000030, 000045 & 000064; Exhibit 2, Nevin Deposition, p. 49, l. 17 - p. 51, l. 19; see Joint Status Report [Doc. 27] § IV (C), Stipulated Facts, Nos. 6 & 7, p. 5.

7.　　　The "Insuring Agreement" for the Oklahoma UM Coverage provided by the Policy issued by Zurich to Wyoming Casing states:

> We will pay, in accordance with Title 36, Oklahoma Statutes, all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

Exhibit 1, Policy Oklahoma UM Coverage, Section A(1) p.1, ZURICH 000064; see Joint Status Report [Doc. 27], § IV (C) Stipulated Fact No. 6, p. 5.

8.　　　The Oklahoma UM Coverage provided by the Policy issued by Zurich Wyoming Casing defined "Who Is An Insured" in the following terms:

> "If The Named Insured is designated in the Declarations as:
> 　　　. . . .
> 2. A partnership limited liability company, corporation or any other form of organization, then the following are "insureds":
>
> 　　a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto".
> 　　　. . . .
> 　　b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

6

Exhibit 1, Zurich Policy, Oklahoma UM Coverage, Section B, pp. 1-2, ZURICH 000064-000065; see Joint Status Report [Doc. 27], § IV(C), Stipulated Fact No. 6, p. 5.

9.   The Oklahoma UM Coverage provided by the Policy issued by Zurich to Wyoming Casing provided certain "Exclusions" from coverage, including the following:

> This insurance does not apply to:
>
> . . . .
>
> 2. The direct or indirect benefit of any insurer or self-insurer under any worker's compensation, disability benefits or similar law.

Exhibit 1, Policy, Oklahoma UM Coverage, Section C, p. 2, ZURICH 000065; Exhibit 2, Nevin Deposition, p. 58, l. 18 - p. 64, l. 2; see Joint Status Report [Doc. 27] § IV (C), Stipulated Fact No. 6, p. 5.

10.   The Oklahoma UM Coverage provided by the Policy issued by Zurich to Wyoming Casing provided certain "Additional Definitions" including the following:

> As used in this endorsement:
>
> . . . .
>
> 2. "Occupying" means in, upon, getting in, on, out or off.
>
> 3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":
>
> a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;
>
> b. That is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle or "trailer" for which there is a liability bond or policy at the time of an accident, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other;

7

      c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

      d. that is a hit-and-run vehicle and neither the driver nor the owner can be identified.

Exhibit 1, Policy, Oklahoma UM Coverage, Section F (2, 3), p. 4, ZURICH 000067; see Joint

Status Report [Doc. 27], § IV (C), Stipulated Fact No. 6; see also 36 O.S. Supp. §3636(C).

    11.    The Oklahoma UM Coverage provided by the Policy issued by Zurich to

Wyoming Casing was provided on a form containing the following statements:

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

OKLAHOMA UNINSURED MOTORIST COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Oklahoma, this endorsements modifies insurance provided under the following:

    Auto Dealers Coverage Form
    Business Auto Coverage Form
    Motor Carrier Coverage Form

With respect to coverage provided by this endorsement, the provisions of the Coverage Form Apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

Exhibit 1, Zurich Policy, Oklahoma UM Coverage, p. 1, ZURICH 000064; see Joint Status

Report [Doc. 27] § IV (C), Stipulated Fact No. 6, p. 5.

### B.    Circumstances of the Underlying Claim

    12.    On February 17, 2015, Jesus Magallan, Jr. and Ochoa were involved in a motor

vehicle accident as passengers in a white 2006 Chevrolet S500 driven by Kirk and owned by

8

Wyoming Casing Service, Inc.  Exhibit 2, Nevin Deposition, p. 35, l. 14 - p. 37, l. 2; see Joint

Status Report [Doc. 27], §IV(C), Stipulated Fact No. 8, p. 5.

13.     Jesus Magallan, Jr. experienced injury and death caused by the motor vehicle

collision of February 17, 2015; Ochoa and Kirk also suffered bodily injury.  Exhibit 2, Nevin

Deposition, p. 121, l. 21-24; see Joint Status Report [Doc. 27], §IV(C), Stipulated Fact No. 9.

14.     At the time of the accident, Jesus Magallan, Jr., Ochoa, and Kirk were employees

of Wyoming Casing and were acting within the course and scope of their employment at the time

of the motor vehicle accident of February 17, 2015.  Exhibit 2, Nevin Deposition, p. 35, l. 14 - p.

37, l. 2; p. 65, l. 22-24; p. 66, l. 12-13; see Joint Status Report [Doc. 27], §IV(C), Stipulated Fact

No. 6. c. 27], §V (C), Stipulated Fact No. 9, p. 6.

15.     The accident of February 17, 2015, involved a collision between a vehicle owned

by Wyoming Casing and driven by Kirk and another vehicle operated by Crelia.  Exhibit 2,

Nevin Deposition, p. 36, l. 4 - p. 37, l. 2.

16.     Zurich determined that the other driver, Crelia, was not at fault in causing the

motor vehicle collision of February 17, 2015.  Exhibit 2, Nevin Deposition, p. 97, l. 3-7.

17.     Zurich determined that Kirk was at fault in causing the motor vehicle collision of

February 17, 2015.  Exhibit 2, Nevin Deposition, p. 97, l. 3-18.

18.     Zurich verified that benefits for the death of Jesus Magallan, Jr. were

compensable under Oklahoma Workers' Compensation Law.  Exhibit 2, Nevin Deposition, p.

64, l. 12 - p. 65, l. 24; see 85A O.S. Supp. 2016, §§ 1-125.

19.     Because Jesus Magallan, Jr. and Kirk were within the course and scope of their

employment with Wyoming Casing at the time of the motor vehicle collision of February 17,

2015, Wyoming Casing and Kirk are immune from civil liability for the death of Jesus Magallan,

Jr.  Exhibit 2, Nevin Deposition, p. 66, l. 17-18; see 85A O.S. Supp. 2016 § 5.

### C.   Zurich Coverage Determinations

20.   Zurich denied the claim submitted on behalf of the Estate of Jesus Magallan, Jr.

even though it "determined that the accident was the fault of Mr. Kirk, and has paid the claims of

the other party [John Crelia]."  Exhibit 2, Nevin Deposition, p. 48, l. 24 - p. 49, l. 5; p. 94, l. 18 -

p. 95, l. 24; Exhibit 4, Denial Letter, Paula N. Nevin to Gary B. Homsey, February 8, 2016, p. 1,

ZURICH 000311.

21.   To support denial of the claim on behalf of the Estate of Jesus Magallan, Jr.,

Zurich quoted the Insuring Agreement and Exclusions 3, 4, and 5 from the Business Auto

Coverage Form in the Policy it issued to Wyoming Casing and stated:

> Auto liability coverage will not apply to the claim of the Estate of
> Mr. Magallan, as he was in the course and scope of his
> employment at the time of the accident and is entitled to worker's
> compensation. Worker's compensation is the exclusive remedy for
> the Estate of Mr. Magallan.

Exhibit 4, Denial Letter, pp. 1-2, ZURICH 000311-000312; see Exhibit 2, Nevin Deposition, p.

37, l. 16 - p. 38, l. 7; p. 39, l. 10-14; p. 47, l. 6 - p. 48, l. 9; p. 49, l. 6-12; see Facts 3 & 5.

22.   To support denial of the claim of the Estate of Jesus Magallan, Jr., Zurich quoted

what it identified as the "pertinent parts of the U.M. coverage" of the policy it issued to

Wyoming Casing, including the Insuring Agreement Exclusion C (2) and the definition of

"uninsured motor vehicle" and asserting:

> The insuring agreement on the policy states that his coverage will
> pay compensatory damages owed to the insured by the owner or
> driver of an uninsured motor vehicle. In this case, the other driver,
> Mr. Crelia, would have to be the at fault party to this accident for

Mr. Magallan's estate to be owed compensatory damages by him, and we have established that he was not at fault for this accident.

The other vehicle or driver in this accident does not qualify as an uninsured motor vehicle as there is valid and adequate insurance on the policy. Because the driver of this vehicle was not at fault for the accident, the claim of Mr. Magallan's estate has been denied by their insurance carrier. Consequently, they would not qualify as an underinsured motor vehicle. They would only be underinsured if they owed more than the limit of their coverage, and in this case they do not owe the claim.

Exhibit 4, Denial Letter, pp. 2-3, ZURICH 000312-000313; see Nevin Deposition, p. 97, l. 3 - p. 98, l. 14; p. 99, l. 10-15; see also Facts 7, 9, & 10.

23.     To support its denial of the claim of the Estate of Jesus Magallan, Jr., Zurich quoted the Insuring Agreement contained in a separate Auto Medical Payments Coverage Form and cited an exclusion eliminating coverage for bodily injury to an employee.  Exhibit 4, Denial Letter, pp. 3-4, ZURICH 000313-000314; Exhibit 1, Policy, Auto Medical Payments Coverage, ZURICH 000142-000143.

24.     Zurich summarized its reasons for denying the claim of the Estate of Jesus Magallan, Jr. as follows:

Based upon our review of the claim, we must respectfully deny the claim of the Estate of Mr. Magallan. Worker's compensation is the exclusive remedy for the auto liability claim against the driver of the vehicle, and specifically excluded under the policy. UM or UIM coverage would not apply, as valid and adequate insurance does exist for the other vehicle involved in the accident and the driver is not the at fault party, and does not owe compensatory damages to Mr. Magallan. Medical Payments Coverage also excludes payment to the employee of the Insured if worker's compensation is available.

Exhibit 4, Denial Letter, p. 4, ZURICH 000314.

11

25.     Zurich's letter denying the claim on behalf of the Estate of Jesus Magallan, Jr. was written by Paula Michelle Nevin, a claims specialist with its major case unit who is a licensed Oklahoma adjuster; she was assigned the claim because of the severity of the accident and discussed coverage issues with her team manager and "coverage champion," William Carroll, who agrees with the position she took under the Zurich policy.   Exhibit 2, Nevin Deposition, p. 5, l. 22-23; p. 7, l. 23 - p. 8, l. 12; p. 11, l. 18 - p. 12, l. 3; p. 15, l. 19 - p. 17, l. 24; p. 71, l. 9-23; p. 94, l. 18 - p. 95, l. 10; Exhibit 3, Carroll Deposition, p. 11, l. 9-13; p. 13, l. 2-9; p. 15, l. 3-11; p. 22, l. 3 - p. 23, l. 11; p. 24, l. 7-13; p. 26, l. 14-20; p. 33, l. 16 - p. 36, l. 25; Exhibit 4, Denial Letter, p. 4, ZURICH 000314.

26.     Apart from verifying the availability of worker's compensation benefits, neither Paula Nevin nor William Carroll considered the effect of Oklahoma law in evaluating the claim on behalf of the Estate of Jesus Magallan, Jr. and reaching the decision to deny coverage under the Zurich policy, although State law would apply when the policy is at variance with it.   Exhibit 2, Nevin Deposition, p. 60, l. 3 - p. 62, l. 3; p. 69, l. 1 - p. 70, l. 4; p. 75, l. 4-16; p. 80, l. 2 - p. 85, l. 23; Exhibit 3, Carroll Deposition, p. 13, l. 10 - p. 14, l. 17; p. 20, l. 10-16; p. 23, l. 12-24.

27.     Zurich, in its denial letter, does not address whether the Estate of Jesus Magallan, Jr. could recover uninsured motorist benefits under its policy despite its conclusion that the Wyoming Casing employee and operator of the Wyoming Casing vehicle, Kirk, was at fault for causing the accident of February 17, 2015.   Exhibit 2, Nevin Deposition, p. 97, l. 13-18; p. 98, l. 19 - p. 99, l. 3; see Exhibit 4, Denial Letter, ZURICH 000311-000314.

28.     Although this is not stated in its denial letter, Zurich contends that Kirk was not an "uninsured motorist" with respect to the claim on behalf of the Estate of Jesus Magallan, Jr. even though it also concluded that there was no coverage for that claim by reason of the

exclusions from the liability coverage of the Zurich policy.  Exhibit 2, Nevin Deposition, p. 41, l. 22 - p. 44, l. 14; p. 47, l. 6 - p. 49, l. 16; p. 56, l. 17 - p. 57, l. 24; p. 98, l. 19 - p. 99, l. 6; Exhibit 3, Carroll Deposition, p. 40, l. 15 - p. 47, l. 6; see Exhibit 4, Denial Letter, ZURICH 000311-000314.

29.     Zurich admits that Magallan is an insured under the Policy it issued to Wyoming Casing with respect to the accident of February 17, 2015.  Exhibit 2, Nevin Deposition, p. 19, l. 4-15; see Facts Nos. 2, 8, & 12 and Exhibits cited therein.

30.     Zurich acknowledges that the Estate of Jesus Magallan, Jr. asserted a first party claim for uninsured motorist coverage based upon the Policy it issued to Wyoming Casing and that it owed non-delegable duties to investigate that claim fully and fairly, to evaluate the terms and conditions of the Policy fairly and fully, and to pay any benefits owed promptly, as well as a duty not to put Zurich's own interest ahead of the interest of its first party claimant.  Exhibit 2, Nevin Deposition, p. 19, l. 21 - p. 23, l. 7; p. 25, l. 2-9; p. 88, l. 3 - p. 89, l. 20; p. 93, l. 2-13; p. 104, l. 17-23; p. 33, l. 11-13.

31.     Zurich contends that three exclusions which appear only in the Business Auto Coverage Provisions of the Policy it issued to Wyoming Casing bar the uninsured motorist claim of the Estate of Jesus Magallan, Jr. even though those exclusions do not appear on the Oklahoma Uninsured Motorist Coverage Form of that policy and this position is not stated Zurich's Denial Letter.  Exhibit 2, Nevin Deposition, p. 41, l. 6 - p. 48, l. 23; p. 54, l. 20 - p. 57, l. 24; Exhibit 3, Carroll Deposition, p. 45, l. 8 - p. 47, l. 6.

32.     Zurich cited an exclusion from the Uninsured Motorist Coverage provided for payments for the direct or indirect benefit of any worker's compensation insurer and relied upon that exclusion to deny uninsured motorist benefits to the Estate of Jesus Magallan, Jr. although

13

that reliance is not explicitly stated in its Denial Letter; nevertheless, Zurich does not know

whether that exclusion is consistent with Oklahoma law.  Exhibit 2, Nevin Deposition, p. 52, l.

18 - p. 54, l. 12; p. 58, l. 7 - p. 62, l. 3; Exhibit 4, Denial Letter, pp. 2-3, ZURICH 00312-00313.

### III. ARGUMENTS & AUTHORITIES

#### A.  The Standard for Summary Judgment

A motion for summary judgment is governed by the principles pronounced by the United

States Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and

*Matsushita Electric Industry v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d

538 (1986).  Summary judgment under Fed. R. Civ. P. 56, is appropriate when there is no

<u>genuine</u> issue of material fact and the moving party is entitled to judgment as a matter of law.

*Celotex*, 477 U.S. at 322-323, 106 S.Ct. at 2552; *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at

2511.

> By its very terms, this standard provides that the mere existence of
> *some* alleged factual dispute between the parties will not defeat an
> otherwise properly supported motion for summary judgment; the
> requirement is that there be no *genuine* issue of *material* fact.

> As to materiality, the substantive law will identify which facts are
> material.  Only disputes over facts that might affect the outcome of
> the suit under the governing law will properly preclude then entry
> of summary judgment.   Factual disputes that are irrelevant or
> unnecessary will not be counted.

*Liberty Lobby*, 477 U.S. at 247-248, 106 S.Ct. at 2510 (italics original) (citation omitted).

> Summary judgment procedure is properly regarded not as a
> disfavored procedural shortcut, but rather as an integral part of the
> Federal Rules as a whole, which are designed "to secure the just,
> speedy and inexpensive determination of every action."

*Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555, quoting Fed.R.Civ.P. 1.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a *genuine issue for trial*." . . . Where the record taken as a whole cannot lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

*Matsushita*, 475 U.S. at 586-587, 106 S.Ct. at 1356 (italics original) (citing Fed.R.Civ.P. 56(e), other citations omitted).  Under these standards, the role of the trial court in considering a motion for summary judgment is as follows:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at 2511.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.

*Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512 (italics original; internal quotation marks, citation and bracketing omitted); see *In re Peterson*, 253 U.S. 300, 310, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920) ("No one is entitled in a civil case to trial by jury, unless and except so far as there are issues of fact to be determined").

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material

15

fact," since a complete failure of proof concerning an essential element of the moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex*, 477 U.S. at 322-323, 106 S.Ct. at 2552. In *Celotex*, the United State Supreme Court reversed an opinion of a Court of Appeals which, in turn, had reversed a decision of a District Court; the United States Supreme Court remanded the case to the Court of Appeals to consider the evidence under the proper standard for summary judgment.

### B. Magallan Is Entitled To UM Benefits

Magallan is an "insured" under the Zurich Policy, as Zurich admits. Fact 29. Magallan submitted a first-party claim for UM benefits, invoking Zurich's contractual obligation to provide benefits to those who satisfy the definition of "insured" under its policy. Fact 30.

Jesus Magallan, Jr. was injured while a passenger in a vehicle owned by Wyoming Casing and operated by a Wyoming Casing employee. Fact 12. At the time of the accident on February 17, 2015, Jesus Magallan, Jr. was "'occupying' a covered 'auto'" and was an "insured" as defined in the Zurich UM form. Fact 8, Exhibit 1, Policy, UM Form, ¶B(2)(a), p. 2, ZURICH 000065. For the same reason, Jesus Magallan, Jr. was "using" the Wyoming Casing vehicle and an "insured" for purposes of the liability coverage. Fact 2; Exhibit 1, Policy, Business Auto Coverage, ¶II(A)(1)(b), p. 2, ZURICH 000046. Magallan is an "insured" under the Zurich policy. Fact 29.

Oklahoma law mandates that the owner of a vehicle obtain an insurance policy which provides coverage, not only for the owner itself, but also for "any other person...using an insured vehicle with the express or implied permission of the named insured...." 47 O.S. 2011, §§7-

600(1)(b); 7-601(A).   Oklahoma law also requires that any such policy provide uninsured motorist coverage "for the protection of persons insured thereunder," unless rejected in writing by the use of statutorily mandated forms.   36 O.S.Supp. 2014, §3636(B, H).   As a passenger, Jesus Magallan, Jr. was a "permissive user" of the Wyoming Casing vehicle and an "insured" under the liability policy, from which it follows he was also an "insured" under the uninsured motorist coverage mandated by law.

As a "permissive user" and "occupant" of the Wyoming Casing vehicle, Jesus Magallan, Jr. was a "Class 2" insured under the Zurich Policy. *Rogers v. Goad*, 1987 OK 59, ¶5, 739 P.2d 519, 521.   Thus, Magallan has both a contractual and statutory relation with Zurich; "Class 2" insured status only means Magallan cannot "stack" multiple UM coverages provided to Wyoming Casing. *Rogers v. Goad*, ¶9, 739 P.2d at 522.   The duties owed to Magallan are the same as those owed to a "Class 1" insured, as Zurich concedes.   Fact 30; see *Townsend v. State Farm Mutual Automobile Insurance Co.*, 1993 OK 119, ¶¶11-12, 860 P.2d 236, 238 (Class 2 insured owed duty of good faith and fair dealing by uninsured motorist insurer).

> Pursuant to §3636, UM insurance is first-party coverage that follows the person.   The UM insurer and its insured occupy a statutory relationship imbued with a duty of good faith and fair dealing.   The injured UM insured is entitled to swift payment from the UM insurer . . . .

*Pentz v. Davis*, 1996 OK 89, ¶9, 927 P.2d 538, 541-542 (citation omitted); *see, Mustain v. U.S.F. & G.*, 1996 OK 98, ¶7, 925 P.2d 533, 535.

As stated in its Denial Letter, Zurich concluded that UM coverage was not available to Magallan because the driver of the other vehicle (Crelia) was not at fault in causing the accident. Facts Nos. 16, 22, & 24.   Zurich did not consider whether its determination that the Wyoming Casing employee, Kirk, was at fault in causing the accident, would support recovery of UM

benefits by Magallan.  Facts Nos. 17, 27, & 28.  Apparently, Zurich believes that Magallan was

not entitled to UM because workers' compensation provides the exclusive remedy for any claim

against Wyoming Casing or Kirk.  Fact No. 21.  However, this position is contrary to Oklahoma

law.  The Oklahoma Supreme Court held that UM benefits were available in a situation with

analogous facts:

> Decedent, sixteen years old, obtained employment with Mid-America Lumber, Inc. in the summer of 1986.  On July 9, 1986, while riding as a passenger in a vehicle owned by his employer and driven by a coemployee, decedent died as a result of a one-car accident.  Both parties agree decedent and the co-employee were in the course of their employment at the time and that both (in the case of the decedent his beneficiaries) recovered benefits under the Oklahoma Workers' Compensation Act.  Appellant also admitted the accident was caused by the negligence of the coemployee.
>
> At the time of the accident there was in effect a comprehensive business insurance policy purchased by Mid-America Lumber, Inc. and issued by appellant, which contained an UM endorsement.  The limit of UM coverage was $500,000.00.  Appellant admits decedent was insured under the endorsement by reason of his occupancy in the covered vehicle and the definition of insured in the policy.

*Torres, supra,*, ¶¶2-3, 849 P.2d at, 409 (citations and footnote omitted); *compare*, Facts Nos. 12-

14, 17-19, & 29.  In *Torres*, the insured argued that UM did not apply because any claim against

the negligent co-employee was barred by workers' compensation exclusivity.  *Torres* at 849 P.2d

at 409.  In rejecting this argument, the Oklahoma Supreme Court noted but did not discuss the

liability coverage provided by the policy.  Instead, it focused exclusively on whether the claimant

was an "insured" for purposes of uninsured motorist coverage:

> [W]e expressly hold that even where the insured is a Class 2 insured by virtue of his occupancy in a covered vehicle the phrase legally entitled to recover damages means only that such insured be required to show fault on the part of the uninsured motorist which gives rise to damages and the extent of those damages.

> We likewise do not believe the fact decedent did not pay the premiums on the instant coverage should bar recovery.  In our view, focusing on who paid the premium is in essence the same argument cast in a little different light than focusing on the status of the insured as Class 1 or Class 2 for the reason most, if not all, Class 2 insureds will have paid no premium.

*Torres*, ¶¶15-16, 849 P.2d at 412 (footnote omitted).  In the present case, Zurich recognizes that Kirk was at fault and caused the accident which resulted in injury to and death of Jesus Magallan, Jr.  Facts Nos. 12, 13 & 15.  Thus, Magallan is "legally entitled to recover damages" from Kirk and Wyoming Casing for purposes of the insuring agreement in Zurich's UM coverage, notwithstanding that a civil action against them is barred by workers' compensation exclusivity.

Therefore, Magallan is entitled to uninsured motorist benefits under the policy Zurich issued to Wyoming Casing and is entitled to a judgment so holding.  Fed. R. Civ. P. 56.

### C.  Zurich's Workers' Compensation Exclusion From UM Coverage Is Unenforceable

Magallan is entitled to UM coverage notwithstanding an exclusion for workers' compensation benefits in the UM Form of the Zurich policy.  Even as written, the exclusion would not bar all recovery of UM benefits by Magallan.  Moreover, the exclusion is unenforceable as contrary to Oklahoma law.

A basic principle of policy interpretation is that "words of inclusion are liberally applied in favor of the insured and words of exclusion are strictly construed against the insurer...." *Max True Plastering Co. v. U.S.F. & G.,* 1996 OK 28, ¶8, 912 P.2d 861, 856, citing, *inter alia,* *Dodson v. St. Paul Insurance Co.*, 1991 OK 24, ¶13, 812 P.2d 372, 377.  Zurich's UM form contains an exclusion stating:

This insurance does not apply to

19

. . . .

> The direct or indirect benefit of any insurer or self-insurer under
> any workers' compensation, disability benefits or similar law.

Fact 9.   Exhibit 1, Policy, UM Form, § C(2), p. 2, ZURICH 000065.   Zurich quoted this

provision in its letter denying UM benefits to Magallan.   Fact 22.   This exclusion, as written,

does not justify withholding UM benefits.   Magallan is not an insurer or self-insurer.   One Court

has declared unenforceable an identical UM exclusion "provid[ing] that its coverage does not

apply to '[t]he direct or indirect benefit of any insurer or self-insurer under any workers'

compensation disability benefits or similar law.'"   *Cadell v. XL Specialty Insurance*, 2012 WL

2359975, *5 (D. N.H., June 20, 2012).   The Court enforced prior case law that "worker's

compensation set-off clauses ... [are] repugnant to ... uninsured motorist statutes" even though

that state's statutes had been amended to grant workers' compensation insurers the right to

subrogate against an employee's UM benefits.   *Cadell*, at *6.   The same holding would follow

under Oklahoma law and should be reached in the present case.

In summary, Magallan, admittedly an insured under the Zurich policy, is entitled to

judgment holding that Magallan is entitled to receive UM benefits under the Zurich Policy and

that the attempt to exclude recovery for workers' compensation benefits is unenforceable as a

matter of law.   Fed. R. Civ. P. 56.

### D.   Zurich's Business Auto Coverage Exclusions Do Not Limit UM Coverage

Zurich may not rely on exclusions in the Business Auto Coverage Form to deny UM

benefits to Magallan.   This is mandated either by the clear language of the UM Coverage form

chosen by Zurich or by the "reasonable expectations" of an insured, whether "Class 1" or "Class

2," such as Magallan.   The explicit Exclusions of the UM Coverage Form supplant those of the

Business Auto Coverage Form for purposes of the UM Coverage, although the provisions of the

Business Auto Coverage Form apply to the coverage provided by that form and to any provisions of the UM Coverage Form not otherwise explicitly addressed.  The Exclusions listed on the UM Coverage Form are the only ones applicable to UM coverage; the exclusions in the Business Auto Coverage Form may not be invoked to deny UM benefits.  Therefore, Zurich may not invoke the exclusions for Workers' Compensation, Employer Liability, or Fellow Employee liability, as they appear in the Business Auto Coverage Form, to deny UM benefits to Magallan.

Zurich relies on a statement on the UM coverage form:

> With respect to coverage provided by this endorsement, the provisions of the coverage form apply unless modified by the endorsement.

Fact 11.  The UM Form has its own Insuring Agreement and its own "Who Is An Insured" provision, distinct from the corresponding provisions on the Business Auto Coverage Form. *Compare*, Fact Nos. 7 & 8, *with*, Fact Nos. 2 & 3.  These portions of the UM Form clearly replace the corresponding provisions of the Business Auto Coverage Form and do not supplement them.  That is the only way to make sense of the provisions.  Otherwise, for example, many of the "Who Is An Insured" provisions of the UM Form would be unnecessary duplication; such surplusage must be avoided in construing the policy.

In contrast, the UM Form contains a section entitled "*Additional* Definitions," indicating that these definitions supplement those in the Business Auto Coverage Form.  Fact 10 (italics added).  The UM "Exclusions" are not identified as "Additional Exclusions," nor are the UM Insuring Agreement and insured definition modified by the adjective "additional," establishing that they replace and do not supplement those in the Business Auto Coverage Form.  Fact 9.

A clear reading of the language chosen by Zurich and used in its UM coverage form establishes that the UM exclusions are not "additional" to those on the Business Auto Coverage

Form; otherwise, the UM section would have been labeled "Additional Exclusions."   Zurich

chose which sections of the UM Coverage Form to identify as "additional" and which not to so

designate.   Zurich's chosen language establishes that the explicit provisions of the UM form, the

Insuring   Agreement,   the   "Who   An   Insured"   provision,   and   the   Exclusions   replace   the

corresponding provisions on the Business Auto Coverage Form and that only the Additional

Definitions on the UM form permit utilization of the other definitions as well.

Alternatively, if there is any doubt about this conclusion, then the policy is ambiguous in

which case the "reasonable expectations" of an insured such as Magallan must be enforced.

Zurich's chosen language creates the enforceable "reasonable expectation" that UM Coverage is

not limited by Exclusions in the separate Business Auto Coverage Form.

The Oklahoma Supreme Court adopted the doctrine of "reasonable expectations" in *Max

True Plastering v. U.S.F.&G.*, 1996 OK 28, 912 P.2d 861.   The doctrine is utilized to resolve

ambiguities in policy language or exclusions which are obscure, technical, or hidden.   *Max True*,

¶18, 912 P.2d at 868.   The Oklahoma Supreme Court explained:

> A policy term is ambiguous under the reasonable expectations
> doctrine if it is reasonably susceptible to more than one meaning.
> When defining a term found in an insurance contract, the language
> is given the meaning understood by a person of ordinary
> intelligence. . . .
>
> In Oklahoma, unambiguous insurance contracts are construed, as
> are other contracts, according to their terms.   The interpretation of
> an insurance contract and whether it is ambiguous is determined by
> the court as a matter of law.   Insurance contracts are ambiguous
> only if they are susceptible to two constructions.

*Max True*, ¶¶19-20, 912 P.2d at 869 (footnotes omitted).   The court concluded:

> The reasonable expectations doctrine recognizes the true origin of
> standardized contract provisions, frees the courts from having to
> write a contract for the parties, and removes the temptation to

> create ambiguity or invent intent to reach a result.  The underlying
> principle of the reasonable expectations doctrine...that reasonable
> expectations of insurance coverage should be honored - has been
> recognized by the majority of jurisdictions which have considered
> the issue and by a steady progression of Oklahoma law....  Today,
> we hold that the doctrine of reasonable expectations may be
> applicable to the interpretation of insurance contracts in Oklahoma,
> and that the doctrine may apply to ambiguous contract language or
> to exclusions which are masked by technical or obscure language
> or which are hidden in a policy's provision.

*Max True*, ¶24, 912 P.2d at 870 (citations omitted).  The interpretation of the Zurich policy, and

whether it is ambiguous, is a question of law to be decided by the Court.  Either the Zurich

policy clearly limits the exclusions from UM coverage to those explicitly stated on the UM

coverage form or the policy is ambiguous on the use of Business Auto Coverage exclusions to

UM coverage, in which case the reasonable expectations of Magallan will govern.

In *Cadell*, *supra*, the Court considered this very issue:

> The New Hampshire [UM] Endorsement provides that "[t]his
> endorsement modifies insurance provided under the following:
> BUSINESS AUTO COVERAGE FORM."  The Endorsement lists
> various exclusions, including exclusions for bodily injuries
> sustained under specific conditions. It does not, however, include
> the injury-during-employment exclusion.
>
> XL argues that the exclusion is applicable here because the
> Endorsement does not provide otherwise. In support, XL notes the
> following language in the New Hampshire Endorsement: "[w]ith
> respect to coverage provided by this endorsement, the provisions
> of the Coverage Form apply unless modified by the endorsement."
> XL argues that because the New Hampshire Endorsement does not
> specifically modify the injury-during-employment exclusion, it
> remains in effect.
>
> In essence, XL argues that the provisions in the New Hampshire
> Endorsement supplement, but do not modify, the provisions found
> elsewhere in the Policy. This argument is belied, however, by
> certain exclusions, including those for workers' compensation
> benefits and damage from war, in the New Hampshire
> Endorsement which are also included in the Business Auto

> Coverage Form. If XL's interpretation were correct, the New Hampshire Endorsement would duplicate exclusions provided in the Coverage Form, making those exclusions mere surplusage. Such an interpretation is unreasonable.
>
> A reasonable reading of the Policy is that the provisions in the "Exclusions" section of the New Hampshire Endorsement are the only exclusions applicable under the Endorsement. Therefore, XL cannot deny coverage based on the bodily injury exception in the Business Auto Coverage Form.

*Cadell*, at *6-*7 (citations omitted).   Similarly, it is "unreasonable" for Zurich to deny UM benefits to Magallan based on Exclusions in the Business Auto Coverage Form.

A clear reading of the language chosen by Zurich and used in its UM coverage form establishes that the UM exclusions are not "additional" to those on the Business Auto Coverage Form; otherwise, the UM section would have been labeled "Additional Exclusions."  At the very least, Zurich's Policy language is ambiguous and must be construed in favor of coverage and Magallan's "reasonable expectations."  Therefore, either way, the Business Auto Exclusions for Workers' Compensation, Employer's Liability, and Fellow Employee liability may not be invoked by Zurich to deny UM coverage to Magallan.

## IV. CONCLUSION

WHEREFORE, premises considered, the Plaintiffs and Counter-Defendants, Ashley Nichole Magallan, Individually and as Surviving Spouse and Next Friend of Jesus Magallan, Jr., Deceased, prays the Court to enter partial summary judgment in her favor and against the Defendant and Counter-Plaintiff, Zurich American Insurance Company, holding that she is entitled to Uninsured Motorist benefits under the Policy issued by Zurich to the Third-Party Defendant, Wyoming Casing Service, Inc.  Magallan is entitled to judgment in her favor on her claims against Zurich for breaching the contract by not paying UIM benefits owed (the issue or

24

determination of damages reserved for the trier of fact) and declaratory relief for rights under the contract or Policy, as well as to judgment against Zurich on its counterclaim for declaratory relief against her.  Petition [Doc. 2-1], ¶¶14-17, 25-26, pp. 3-5; Zurich's Counterclaim [Doc. 11].

Respectfully submitted,

*s/ Charles C. Weddle III*
JOE E. WHITE, JR.          OBA #12930
CHARLES C. WEDDLE III  OBA #18869
WHITE & WEDDLE, P.C.
630 N.E. 63rd Street
Oklahoma City, Oklahoma  73105
(405) 858-8899
(405) 858-8844 FAX
joe@whiteandweddle.com
charles@whiteandweddle.com

and

GARY B. HOMSEY          OBA#4229
HOMSEY LAW CENTER
4816 Classen Boulevard
Oklahoma City, Oklahoma  73118
(405) 843-9923
(405) 848-4223
gbh@homseylawcenter.com

*Attorneys for Plaintiffs,*
*Ashley Nichole Magallan, individually,*
*and as surviving spouse and next friend of*
*Jesus Magallan, Jr., Deceased*

CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of July, 2017, I electronically transmitted the

attached document to the Clerk of Court using the ECF System for filing and transmittal of a

Notice of Electronic Filing to the following ECF registrants:

Michael J. Masterson, Esq.
David R. Fleury, Esq.
Wilburn, Masterson & Fleury
2421 E. Skelly Drive
Tulsa, Oklahoma  74105

*Attorneys for Defendant/Third-Party Plaintiff*
*Zurich American Insurance Company*

Brock C. Bowers, Esq.
Hiltgen & Brewer, P.C.
9505 N. Kelly Avenue
Oklahoma City, Oklahoma  73131

*Attorney for Defendant,*
*John Christopher Crelia*

Alexandra G. Ah Loy, Esq.
Johnson Hanan & Vosler
9801 N. Broadway Extension
Oklahoma City, Oklahoma  73114

and

Ryan L. Woody, Esq.
Matthiesen Wickert & Lehrer, S.C.
1111 E. Sumner Street
Hartford, Wisconsin  53027

*Attorneys for Third-Party Defendant,*
*Wyoming Casing Service, Inc.*

s/ Charles C. Weddle III
CHARLES C. WEDDLE III