UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ASHLEY NICHOLE MAGALLAN, individually, and as surviving spouse and next friend of Jesus Magallan, Jr., deceased, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 16-CV-0668-CVE-FHM |
| ZURICH AMERICAN INSURANCE COMPANY, ) ) ) ) | |
| Defendant, ) ) | |
| and ) ) | |
| ZURICH AMERICAN INSURANCE COMPANY, ) ) ) ) | |
| Third-Party Plaintiff, ) ) | |
| v. ) ) | |
| WYOMING CASING SERVICE, INC., ) ) | |
| Third-Party Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is Wyoming Casing Service, Inc.'s (Wyoming Casing) motion for summary judgment. Dkt. # 81.

**I.**

This case arises from an automobile accident that resulted in the death of Magallan's husband, Jesus Magallan, Jr. Dkt. # 2-1, at 6. Magallan is, and Jesus Magallan, Jr. was, a resident of Texas. On February 17, 2015, Jesus Magallan, Jr. and Pedro Ochoa were passengers in a pickup truck being driven by Robert Kirk and owned by Wyoming Casing. Dkt. # 74, at 12-13; Dkt. # 80,

at 5. All three men were employees of Wyoming Casing, and were acting within the scope of their employment. Dkt. # 74, at 13; Dkt. # 80, at 5. Wyoming Casing is a North Dakota corporation, with its principal place of business in North Dakota. The pickup truck was involved in an automobile accident with another vehicle in Freedom, Oklahoma, resulting in injuries to Ochoa and Kirk and the death of Jesus Magallan, Jr. Dkt. # 74, at 13; Dkt. # 80, at 5. Zurich American Insurance company (Zurich), Wyoming Casing's uninsured motorist coverage carrier, determined that Kirk caused the accident by turning in front of the other vehicle. Dkt. # 80-2, at 2. Magallan does not <u>now</u> dispute that Kirk caused the accident. Dkt. # 80, at 5; Dkt. # 93, at 10. At the time of the accident, Wyoming Casing had purchased a business automobile insurance policy from Zurich and a workers compensation insurance policy from American Zurich Insurance Company (American Zurich), a separate affiliated entity which is a non-party to this action. Dkt. ## 71-12, 80-5, 93, at 10. Zurich is an Illinois corporation, with its principal place of business in Illinois.

The named insured in the workers compensation policy is Wyoming Casing, and the policy period is September 1, 2014 to September 1, 2015. Dkt. # 109-4, at 13. The workers compensation policy contains an endorsement entitled "Large Deductible Endorsement," which states that the insured, Wyoming Casing, has a $100,000 workers compensation deductible for bodily injury per accident. Id. at 94. In addition, the "Subrogation" section of the Large Deductible Endorsement states that American Zurich "has" Wyoming Casing's rights to recover from anyone liable for an injury, and that if American Zurich so recovers, it will first apply the proceeds to reimburse workers compensation payments it has made and then apply the remainder of the recovery, if any, to reimburse Wyoming Casing for its deductible. Id. at 95.

The named insured in the business automobile insurance policy is also Wyoming Casing, and the policy period is September 1, 2014 to September 1, 2015. Dkt. # 80-4. The policy includes a business auto coverage form that describes Wyoming Casing's "covered autos liability" coverage. Dkt. # 80-5. The business auto coverage form states that Zurich "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" Dkt. # 80-5, at 2. According to the policy's declarations, "any auto" is covered under the covered autos liability coverage. Dkt. # 80-4, at 2. The policy has a coverage limit of $2,000,000. Id. The policy also contains exclusions, including a fellow employee exclusion, which excludes bodily injury to "[a]ny fellow 'employee' of the 'insured' arising out of and in the course of the fellow 'employee's' employment." Dkt. # 80-5 at 4.

In addition, the policy contains an Oklahoma uninsured motorists (UM) coverage endorsement. Dkt. # 80-6. The UM endorsement has a coverage limit of $1,000,000 "per accident." Dkt. # 80-6, at 1. According to the UM endorsement, Zurich "will pay, in accordance with Title 36, Oklahoma Statutes, all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.'" Id. The UM endorsement states that "[a]nyone 'occupying' a covered 'auto'" is an insured. According to the business auto declarations, only automobiles owned by Wyoming Casing are "covered autos" under the UM endorsement. Dkt. # 80-4, at 2; Dkt. # 80-5, at 1. It is undisputed that Magallan, Kirk, and Ochoa were defined first party insureds under the UM endorsement, as they were occupants of a covered auto. Dkt. # 80-6, at 1-2.

After the automobile accident, Magallan, individually and as surviving spouse of Jesus Magallan, Jr., filed a first party UM claim with Zurich on or about July 7, 2015. Id.; Dkt. # 93, at 10. Zurich denied her UM claim on or about February 8, 2016. Dkt. # 80, at 6; Dkt. # 93, at 10. Magallan also filed a workers compensation claim in Oklahoma on December 7, 2015. Dkt. # 80, at 5. American Zurich awarded Magallan benefits for her workers compensation claim in June 2016. Id. Magallan filed this suit in Delaware County District Court on October 3, 2016. Dkt. # 2-1, at 1. Her petition alleged claims for breach of contract, bad faith, and declaratory relief against Zurich, and negligence and wrongful death against John Christopher Crelia, the driver of the other automobile involved in the accident.[1] Id. The suit was filed in Delaware County because Crelia was at the time a resident there. Zurich removed the suit to this Court (Dkt. # 2) and filed a counterclaim (Dkt. # 11) against Magallan and a third-party complaint (Dkt. # 15) against Wyoming Casing, both seeking a declaratory judgment regarding Zurich's obligations under the business automobile insurance policy. As this Court concluded in an earlier opinion, Magallan is entitled to coverage under the policy's UM endorsement because the vehicle that Kirk was driving was underinsured, as the fellow employee exclusion precluded Magallan's claim against him. See Dkt. # 115, at 10.[2] Magallan's entitlement to damages, if any, remains a question for the jury in this case. Id. at 30.

After Zurich filed its third-party complaint (Dkt. # 15) against Wyoming Casing, Wyoming Casing filed a cross-claim (Dkt. # 56) against Crelia, which is now moot, and a counterclaim (Dkt. # 57) against Zurich, both alleging that Wyoming Casing has paid workers compensation benefits

---

[1] All claims against Crelia were dismissed with prejudice on August 4, 2017. See Dkt. # 83.

[2] In the same opinion (Dkt. # 115), this Court also concluded that Zurich was entitled to summary judgment on Magallan's bad faith claim and request for punitive damages. Id. at 24-30.

4

to Jesus Magallan, Jr. and Ashley Magallan (specifically, $275.22 in medical benefits to Jesus and $149,042.86 in death benefits to Ashley). Dkt. # 54, at 13, 14. In its now moot cross-claim (Dkt. # 56) against Crelia, Wyoming Casing sought a declaration that it was entitled to recover under Okla. Stat. tit. 85A, § 43(1)(c), which entitles an employer that joins in an action for death against a third party to a portion of the proceeds, for payment of the amount the employer has paid or will pay to the deceased or his estate in workers compensation. In its counterclaim (Dkt. # 57) against Zurich, on which Wyoming Casing now moves for summary judgment (Dkt. # 81), Wyoming Casing seeks a declaration that it is entitled to a portion of the proceeds, in the event Magallan receives a UM award, under Okla. Stat. tit. 85A, § 43(B)(4), which entitles an employer liable for workers compensation "to maintain a third-party action against the employer's...underinsured motorist coverage." In its answer (Dkt. # 62) to Wyoming Casing's counterclaim, Zurich admitted every fact Wyoming Casing alleged, including that Wyoming Casing had paid $275.22 in medical benefits to Jesus and $149,042.86 in death benefits to Ashley, and that, in the event Magallan receives a UM award, Wyoming Casing has a statutory right of subrogation pursuant to 85A, § 43(B)(4). Dkt. # 62, at 1-2.[3]

In its motion for summary judgment (Dkt. # 81), Wyoming Casing amended its allegations to state that American Zurich is the entity that paid workers compensation benefits to Magallan, and that, as of August 3, 2017, the amounts had increased to $151,614.94 in death benefits and $275.22

---

[3] Of course, such admissions would benefit Zurich's affiliate, American Zurich, the workers compensation insurer.

in medical benefits. Dkt. # 81, at 4.[4] Both Magallan and Zurich admit these facts. Dkt. # 92, at 5; Dkt. # 94, at 7.

## II.

Wyoming Casing was brought into this action by Zurich filing a third-party complaint (Dkt. #15) against Wyoming Casing. Before considering Wyoming Casing's motion for summary judgment, the Court will consider sua sponte whether Zurich's third-party complaint, brought pursuant to Rule 14 of the Federal Rules of Civil Procedure, is properly before the Court. See First Nat'l Bank of Nocona v. Duncan Sav. & Loan Ass'n, 957 F.2d 775, 777-78 (10th Cir. 1992) ("The granting of leave for a defendant to prosecute a third party proceeding under Rule 14 rests in the sound discretion of the trial court."); Fed. R. Civ. P. 14, Advisory Committee Notes to 1963 Amendment ("After a defendant is brought in, the court has discretion to strike the third party claim..."); see also Fed. R. Civ. P. 41(b) ("If the plaintiff fails to...comply with these rules... a defendant may move to dismiss the action"); Olsen v. Mapes 333 F.3d 1119, 1204 n.3 (10th Cir. 2003) ("Although the language of [Rule 41(b) of the Federal Rules of Civil Procedure] requires that the defendant file a motion to dismiss, the Rule has long been interpreted to permit courts to dismiss actions sua sponte for a plaintiff's failure to...comply with the rules of civil procedure....").

Under Rule 14, "[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a). What the rule does not permit, however, is the "joinder of...persons who may have a claim against the defendant..." Horn v. Daniel, 371 F.2d 471, 474 (10th Cir. 1962). In others words,

---

[4] To corroborate this assertion, Wyoming Casing attaches a declaration of a recovery litigation specialist for American Zurich, as well as the relevant financial documentation. Dkt. # 83.

although Rule 14 allows a defendant to implead a party who is or may be liable to the defendant, it does not allow a defendant to implead a party to whom the defendant might be liable. See, e.g., King Fisher Marine Service, Inc. v. 21st Phoenix Corp, 839 F.2d 1155 n.1 (10th Cir. 1990) ("Rule 14's provision is narrow: the third-party claim must be derivative of the original claim for all or part of the plaintiff's claim against [the defendant]"); Helfy v. Textron, Inc., 713 F.2d 1487, 1498 (10th Cir. 1983) (holding Rule 14 impleader improper where proposed implead parties "could not be liable to [defendant] for all or part of the plaintiff's claims) (citing 6 Wright & Miller § 1446 at 246-48 (1971)); Marshall v. Pointon, 88 F.R.D. 566, 568 (W.D. Okla. 1980) ("The crucial characteristic of a Rule 14 claim is that the original defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff."); Weil v. Dreher Pickle Co., 76 F.R.D. 63 (W.D. Okla. 1977) ("A Defendant may bring in a third party defendant only if the prospective third party defendant is or may be liable to the Defendant under substantive law.").

In its third-party complaint (Dkt. #15) against Wyoming Casing, Zurich does not allege that Wyoming Casing is or may be liable to it. Moreover, the factual record in this case makes clear that there is no circumstance in which Wyoming Casing could be liable to Zurich. In fact, it is just the opposite: as Zurich is Wyoming Casing's UM carrier, and Okla. Stat. tit. 85A, § 43(B)(4) appears to allow an employer to maintain a third-party action against the employer's UM coverage, the only question between Zurich and Wyoming Casing in this case is whether, in the event Magallan receives a UM award from Zurich, Zurich is liable to Wyoming Casing for a portion of the award. Because it alleges no facts that even suggest Wyoming Casing is or may be liable to it, Zurich's third-party complaint (Dkt. #15) fails to comply with Rule 14's requirements, and Wyoming Casing, therefore, is not a party properly before the Court. Accordingly, Zurich's third-party complaint

(Dkt. #15) is stricken, Wyoming Casing's counterclaim (Dkt. # 57) against Zurich is stricken, and Wyoming Casing's motion for summary judgment (Dkt. # 81) against Magallan and Zurich is denied as moot.[5]

**IT IS THEREFORE ORDERED** that Zurich's third-party complaint (Dkt. #15) against Wyoming Casing is **stricken**, Wyoming Casing's counterclaim (Dkt. #57) against Zurich is **stricken**, and Wyoming Casing's motion for summary judgment (Dkt. # 81) against Magallan and Zurich is **denied as moot**.

**IT IS FURTHER ORDERED** that Wyoming Casing Service, Inc. is terminated as a party to this action.

**DATED** this 18th day of September, 2017.

*[Signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[5] In the event Magallan is awarded UM benefits, the Court notes that Wyoming Casing or its workers compensation carrier, American Zurich, may be entitled, under Okla. Stat. tit. 85A, §§ 43(2), (B)(4), to recover workers compensation benefits paid. If a dispute between Magallan and Wyoming Casing arises on this issue, that is between them. Each subsection of 85A, § 43 provides employers or carriers with different apportionment rights to proceeds that an injured employee recovers from a third-party. Which subsection an employer or carrier can recover under depends on whether it or they brought, joined, or were uninvolved with, the third-party claim. In turn, whether an employer or carrier may bring or join a claim presents complicated issues that arise at the intersection of relevant Oklahoma statutes of limitations and specific Federal Rules of Civil Procedure.